**MARIO ALBERTO TORRES,**           )
                                    )
    **Petitioner,**             )
                                    )
    **vs.**                    )      <u>**MEMORANDUM OF**</u>
                                    )      <u>**DECISION AND ORDER**</u>
**UNITED STATES OF AMERICA,**       )
                                    )
    **Respondent.**             )
_____ )

    **THIS MATTER** is before the Court on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. 1]; Respondent's Motion for Summary Judgment [Doc. 7]; and Petitioner's Response to Respondent's Motion for Summary Judgment [Doc. 11].

**FACTUAL BACKGROUND**

    Petitioner Mario Alberto Torres was indicted by the Grand Jury for the Western District of North Carolina in a Superseding Indictment on October 1, 2007, and charged with possession with intent to distribute at least 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii); and using and carrying a firearm during and in relation to a drug trafficking offense and possession of a firearm in furtherance of such an offense, in violation of 18 U.S.C. § 924(c)(1). [Crim. No. 2:07-cr-28-MR-

1, Doc. 11: Superseding Indictment]. Petitioner entered into a plea agreement with the Government on November 26, 2007, agreeing to plead guilty to both counts and, three days later, this Court conducted a plea colloquy and hearing pursuant to Federal Rule of Criminal Procedure 11. [Id., Doc. 15].

On April 21, 2008, the Court sentenced Petitioner to 60 months imprisonment on each count, to be served consecutively pursuant to 18 U.S.C. § 924(c), for a total term of imprisonment of 120 months. [Id., Entry Dated 4/21/2008]. Petitioner appealed, and on March 23, 2009, the Court of Appeals for Fourth Circuit the affirmed this Court's judgment. See United States v. Torres, 319 Fed. App'x 220 (4th Cir. 2009). On October 5, 2009, Petitioner filed the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.

According to the Presentence Report ("PSR"), investigators with the Jackson County, North Carolina, Sheriff's Department and the North Carolina State Bureau of Investigation learned that Petitioner and a co-conspirator, Pedro Gonzalez-Sanchez, were distributing methamphetamine, powder cocaine, and marijuana over several counties in Western North Carolina.[1] [Crim. No. 2:07-cr-28-MR-1, Doc. 20 at 4:

---

[1] Pursuant to the plea agreement, Petitioner stipulated that the factual basis for

2

PSR].  Petitioner ultimately engaged in numerous transactions with a confidential informant, distributing approximately 81 grams of cocaine, more than 1326 grams of marijuana, and approximately 265 grams of methamphetamine.  [Id.].  During one of these transactions, Petitioner sold the confidential informant a 9-millimeter handgun and 54 grams of methamphetamine, for a total of $2500.  [Id.].  On March 27, 2007, law enforcement agents searched Petitioner's automobile and residence and seized 80.21 grams of methamphetamine, 849.44 grams of marijuana, $15,279 in cash, and multiple sets of digital scales.  [Id. at 4-5].

On November 26, 2007, Petitioner entered into a plea agreement in which he pled guilty to both counts charged in the superseding indictment, and the parties stipulated that the quantity of methamphetamine that was attributable to Petitioner was at least 40 grams but less than 50 grams.[2] [Crim. No. 2:07-cr-28-MR-1, Doc. 15].  The plea agreement also contained a waiver of Petitioner's rights to appeal or to collaterally attack his

his guilty pleas could be established by the offense conduct in the PSR.

[2] The basis for this finding is unclear.  The offense conduct set out in the PSR, to which there was no objection, states that Petitioner had been involved in numerous transactions with a confidential informant in which a total of 265 grams of methamphetamine was sold, plus an additional 80 grams of methamphetamine was found in Petitioner's home at the time of his arrest.  It would, therefore, appear that the quantity of methamphetamine attributable to Petitioner would be 345 grams rather than the 40 to 50 grams set out in the offense level calculations in the PSR.  In addition, quantities of cocaine and marijuana would appear to be attributable to Petitioner, but these were not included in the total offense level calculation.  To the extent that this was in error, it was an error that was to the substantial benefit of the Petitioner.

conviction and/or the sentence imposed *except* on the bases of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; and (3) "whether the undisputed facts – sale of a firearm contemporaneous with the sale of methamphetamine – are sufficient for conviction under 18 U.S.C. § 924(c)." [Id., Doc. No. 15 at ¶ 19].

During Petitioner's Rule 11 colloquy, he affirmed that he and his attorney, Assistant Federal Defender Raquel Wilson, had reviewed the superseding bill of indictment and the plea agreement and that both documents had been read to him and translated from English to Spanish. [Id., Doc. No. 33 at 5-6: Rule 11 Transcript]. The Court then recited the charges to which Petitioner was pleading guilty, the essential elements of each offense, and the maximum penalties he faced. [Id. at 6-11]. The Court specifically informed Petitioner that he faced a statutory mandatory minimum of five years imprisonment for the firearm offense. Petitioner affirmed that he understood the charges and the maximum and minimum penalties for each charge, as well as that the sentences for the firearms charge was required to be consecutive to the sentence for the drug charge. [Id.]. Petitioner acknowledged that he was, in fact, guilty of the offenses charged in Counts One and Two of the superseding indictment. [Id.]. After Government counsel recited in detail the provisions of the parties' plea

agreement, Petitioner affirmed that he understood and agreed with the terms of the plea agreement as presented by the Government. [Id. at 16-18]. Thereafter, the Court specifically asked Petitioner if he had discussed the waiver of appellate and post-conviction rights, including the named exceptions, with his attorney and if he knowingly and willingly accepted the limitations on his appellate and post-conviction rights. Again, Petitioner responded affirmatively. [Id. at 18]. Thereafter, Petitioner's counsel affirmed that she had reviewed each of the terms of the plea agreement with Petitioner, that she was satisfied that he understood those terms, and that she had had both the superseding bill of indictment and the plea agreement read to Petitioner and translated from English into Spanish. [Id. at 19].

Petitioner stated to the Court that he had discussed possible defenses with his attorney and was satisfied with her services. The Court then accepted Petitioner's pleas of guilty to Counts One and Two, finding that Petitioner was pleading guilty knowingly and voluntarily. [Id. at 21].

In preparation for Petitioner's sentencing the Probation Office for the Western District of North Carolina prepared a draft PSR dated February 25, 2008, with a revised final PSR dated March 18, 2008. [Crim. No. 2:07-cr-28-MR-1, Docs. 20; 22]. Based on a drug quantity of between 40 and 50

grams of methamphetamine, the Probation Officer calculated a total offense level of 21 and an applicable Guidelines range of between 37 and 46 months imprisonment as to the drug trafficking offense. [Id., Doc. 22 at ¶ 68]. The Probation Officer also noted, however, that based on the drug quantity to which Petitioner stipulated in the parties' plea agreement, Petitioner faced a mandatory minimum term of imprisonment of 60 months as to the drug trafficking offense under 21 U.S.C. § 841(b)(1)(B). [Id.]. Additionally, Petitioner was subject to a consecutive five-year term of imprisonment as to the firearm offense. [Id.]. Petitioner filed no objections to the PSR.

On April 21, 2008, the District Court, the Honorable Lacy H. Thornburg presiding, conducted Petitioner's sentencing hearing. [Crim. No. 2:07-cr-28-MR-1, Doc. 34 at 2-10: Sentencing Transcript]. During the hearing, Petitioner was asked whether he would "stipulate that there is a factual basis to support his plea of guilty . . . and, further, that the Court may accept the evidence contained in the Presentence Investigation Report as establishing such a factual basis." [Id. at 2]. In response, defense counsel stated, "[y]es," that Petitioner did not "have any dispute with the facts in the presentence report," but that Petitioner "reserve[d] the right to appeal the issue of whether the facts in the presentence report

6

amount to a violation of [18 U.S.C. § 924(c)]." [Id.]. Acknowledging that Petitioner's argument was "foreclosed by Fourth Circuit precedent," Petitioner's counsel still chose to reserve that issue. [Id.]. Based thereon the Court confirmed the Petitioner's guilty plea as taken before the Magistrate Judge, found the offense level and criminal history in accord with the PSR and sentenced the Petitioner to 60 months imprisonment on the drug charge plus a consecutive 60 month sentence on the firearms charge, for a total term of incarceration of 120 months.

On appeal, Petitioner challenged the sufficiency of the evidence to convict him of the Section 924(c) violation charged in Count Two. He also argued that this Court abused its discretion by accepting Petitioner's plea of guilty to that charge without an adequate factual basis. In affirming Petitioner's convictions, the Fourth Circuit held that the evidence supported a finding that he sold a firearm in relation to a narcotics transaction and that this Court did not abuse its discretion in finding a factual basis supported Petitioner's guilty plea to Count Two. Torres, 319 Fed. App'x at 222.

In response to Petitioner's allegations of ineffective assistance of counsel, the Government has submitted an affidavit from trial counsel Raquel Wilson. See [Doc. 6-2: Wilson Affidavit]. In her affidavit, Wilson first states that she met with Petitioner six times before the entry of his

guilty plea in order to listen to his version of the events surrounding the charges against him, to discuss the Government's evidence with him, and to advise him as to how the law applied to the charges against him. [Id. at 2]. According to Wilson's time records and notes, her meetings with Petitioner ranged from thirty minutes to more than four hours. [Id.]. Before Petitioner's arraignment, Wilson met with him for an hour and a half, at which time Petitioner "expressed a complete lack of understanding as to how he could have been charged with a gun-related crime" and claimed that "he had never had anything whatsoever to do with guns and had never touched a gun, [and] therefore he had to be innocent of the 924(c) charge in count two." [Id.].

According to her affidavit, Wilson explained to Petitioner that she did not know the Government's evidence at that time; that the law prohibited her from reviewing the Government's discovery until after Petitioner's arraignment; that she would ultimately review the discovery with Petitioner and perform any necessary legal research; and that she would have her investigator perform any necessary investigation. [Id.]. Shortly after Petitioner's arraignment, Wilson received 479 pages of discovery from Government counsel and reviewed them within two days, taking extensive notes. [Id.]. Following her review of discovery, Wilson requested that the

Government provide her with tapes of the controlled drug buys mentioned in law enforcement reports but not included in the discovery provided to her. [Id.]. Further, Wilson states in her affidavit that she knew that Government counsel planned to supersede the indictment, and she asked counsel to decline to re-indict Petitioner on the gun violation, trying to persuade him that the Government's case was weak and pointing out that a then-pending case in the Supreme Court, United States v. Watson, 552 U.S. 74 (2007), might address similar allegations pending against Petitioner. [Id. at 2-3].

Wilson further states in her affidavit that Government counsel explained his rationale for charging Petitioner with the Section 924(c) violation and cited supporting Fourth Circuit case law, but "did not close the door entirely to negotiating a settlement." [Id. at 3]. Wilson further declares that she met several times with Petitioner to review the discovery in his case; that because it would have been too difficult to review the entire 479 pages with him, she took extensive notes, selected snapshots in PDF format, and read many of those portions of the discovery to Petitioner in Spanish; and that throughout her meetings with him Petitioner continuously denied that he had sold a firearm contemporaneously with methamphetamine to a confidential informant. [Id. at 3].

Wilson ultimately obtained and reviewed the tape recordings of Petitioner's transactions with the confidential informant and, after reviewing them, met with Petitioner at the jail and played the recordings on her laptop for Petitioner.  [Id. at 3-4].  According to Wilson, the tape recordings clearly established that Petitioner sold methamphetamine along with a firearm to a confidential informant.   That is, Petitioner and the confidential informant could be heard on the tape recordings discussing the sale of the firearm and the methamphetamine at the same time, and the confidential informant could be heard manipulating the weapon and commenting that it jammed. [Id.].  After hearing the tape recordings, Petitioner stopped denying that he had sold a firearm, enabling counsel and Petitioner to discuss a plea of guilty.  [Id.].

Concerning legal arguments, Wilson states in her affidavit that she discussed the pending Watson case with Petitioner and advised him that she could not predict how the Supreme Court would rule, believing that even though the facts in Watson did not fit the allegations of Petitioner's case it was worth preserving a legal objection in case the Supreme Court's eventual ruling provided broader implications than anyone anticipated. [Id.].

According to Wilson, it has always been her practice to review with

her clients the statutes charged, the discovery materials, and the evidence likely to be admitted at trial, and she adhered to that practice in representing Petitioner and never believed him to be confused about the nature of the charges against him.  [Id. at 6].  Responding to Petitioner's second claim of ineffective assistance of counsel – failure to object to Count Two as duplicitous – Wilson states that Petitioner did not raise the issue with her during the criminal case and even if he had done so, she would not have filed a motion to dismiss.  [Id. at 5].  Wilson states that she believes Petitioner "is confusing the charging of two crimes where there is only one crime, with the practice in the Fourth Circuit of charging law violations in the conjunctive."  [Id.].  Citing a number of cases, Wilson states that the law is clear that an indictment conjunctively charging all the ways a statute can be violated does not constitute duplicity.  Wilson further states that Petitioner was charged with using and carrying a firearm during and in relation to a drug trafficking offense, and possession of a firearm in furtherance of a drug trafficking offense, which, pursuant to Fourth Circuit case law, does not constitute a duplicitous indictment.  [Id.].

Likewise, Wilson states that she would not have objected to any alleged constructive amendment of the indictment during the plea colloquy. Citing <u>United States v. Farish</u>, 535 F.3d 815, 823-24 (8th Cir. 2008), and

United States v. Brown, 504 F.3d 99, 104 (D.C. Cir. 2007), Wilson states that charging Petitioner with all the ways Section 924(c) could be violated and proving only one act does not constitute a constructive amendment. [Id. at 5-6]. Next, responding to Petitioner's claim that she failed to appeal the issues of a duplicitous indictment and constructive amendment of the indictment by the Court, Wilson states that Petitioner never raised these issues to her and, had he done so, she would have done nothing differently. Wilson states that she preserved the issue of whether Petitioner's conduct constituted a violation of Section 924(c) to leave open an argument that Watson required reversal, if Watson proved favorable to Petitioner, which it did not. [Id. at 7].

In conclusion, Wilson notes that Petitioner benefitted from the plea agreement because the Government agreed to hold him accountable for a smaller amount of drugs than the amount readily provable and, in turn, established a lower guideline sentencing range, which made Petitioner eligible to receive the mandatory minimum sentence on Count One instead of almost an additional year.[3] [Id.]. Additionally, Wilson states that she

---

[3] The totals of the drug quantities involved in Petitioner's controlled buys or seized from Petitioner (345 grams of methamphetamine, 81 grams of cocaine and 1326 grams of marijuana) would have yielded a base offense level of 30 under the then prevailing guidelines. USSG (2007) §2D1.1. This would have been six offense levels higher than that used in the calculation of Petitioners guideline range for sentencing. Using the full drug quantities would have yielded a guideline range of 70-87 months, rather than 60

reviewed the PSR with Petitioner on March 4, 2008, that her notes reflect that he had only one objection to the PSR – namely, an objection to information concerning his wife's residence – and that Wilson filed a response pursuant to his direction. [Id. at 8]. Finally, Wilson declares that she has no reason to believe that Petitioner did not understand the nature of the charges, the factual allegations, or the risks and benefits of the plea agreement. [Id.].

## PROCEDURAL HISTORY

Petitioner filed the instant motion to vacate on October 5, 2009. [Doc. 1]. On January 14, 2010, Respondent filed its Response and the pending Motion for Summary Judgment. [Docs. 6; 7].

On January 27, 2010, this Court entered an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of his obligation to file a response to the Motion for Summary Judgment, and explaining the requirement that he present his own evidence by affidavit or unsworn declarations. [Doc. 8]. On February 25, 2010, Petitioner filed a Response to Respondent's Motion for Summary Judgment. [Doc. 11].

In his motion to vacate, Petitioner alleges that his plea of guilty to the

---

months per USSG §5G1.1 based on the statutory minimum. Counsel's affidavit implies but does not expressly state that the facts regarding drug quantities were "bargained". In light of the Court's conclusion herein that Petitioner is not entitled to have his judgment or sentence vacated, the Court need not address this issue any further.

Section 924(c) violation charged in Count Two of the indictment was unknowing and involuntary based on ineffective assistance of counsel. Specifically, Petitioner first alleges that his guilty plea to Count Two was involuntary because counsel "failed to listen to his version of the facts . . . [and] his understanding of the nature of the charges," resulting in counsel's failure to "provide [Petitioner] with an understanding of 'gun laws' in relation to the actual facts of his case."  [Doc. 1-1 at 8: Memorandum in Support of Motion to Vacate].   Second, Petitioner alleges that counsel failed to conduct factual and legal investigations to determine the viability of a defense against Count Two causing Petitioner to enter a plea of guilty "without full knowledge and understanding of the true nature of his charges."  [Id. at 11].  Third, Petitioner alleges that counsel failed to defend him against a defective indictment.  [Id. at 14-15; 20].  Finally, Petitioner alleges that counsel failed to raise meritorious issues on appeal.  [Id. at 22].

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides:

A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

FED. R. CIV. P. 56(a).   The rule goes on to provide procedures for

responding to a motion for summary judgment:

c) Procedures.

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.

(4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. 56(c).

On a motion for summary judgment, the moving party has the burden

of production to show that there are no genuine issues of fact for trial. Once the moving party has met that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting FED. R. CIV. P. 56).

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 668, 687-92, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

To demonstrate prejudice, Petitioner must show a probability that the alleged errors worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Murray v. Carrier,

477 U.S. 478, 494, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986) (emphasis in original) (quoting United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)).  Under these circumstances, Petitioner "bears the burden of proving Strickland prejudice."  Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983)).  If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697, 104 S. Ct. 2052).  In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998).  Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'"  Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993)).

Counsel is presumed to be competent, and a petitioner seeking post-conviction relief bears a heavy burden to overcome this presumption. Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983).  Conclusory allegations do not overcome the presumption of competency.  Id.  A petitioner bears an even heavier burden where the claim of ineffective

assistance of counsel follows the entry of a guilty plea. Where a defendant has pled guilty, he must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). Additionally, because several of Petitioner's allegations challenge counsel's conduct at sentencing, in order to demonstrate an entitlement to relief on those matters, Petitioner must, at a minimum, allege facts which establish that his "sentence would have been more lenient" absent counsel's errors. See Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999).

## DISCUSSION

### A.    Procedural Default

Petitioner's claims of an unknowing and involuntary guilty plea, a duplicitous superseding indictment concerning Count Two, and a constructive amendment of Count Two are defaulted due to his failure to raise them on direct appeal. Generally, claims that could have been but were not raised on direct review are procedurally barred. "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621, 118 S. Ct. 1604, 1610, 140 L. Ed. 2d 828 (1998) (citation and internal quotation marks

omitted).

To collaterally attack a conviction or sentence based on errors that could have been but were not raised on direct appeal, a petitioner must show both cause to excuse his default and actual prejudice resulting from the errors of which he is complaining, or he must show that a "miscarriage of justice" would result from the court's refusal to consider his claim. United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999) (citing United States v. Frady, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 1594, 71 L. Ed. 2d 816 (1982)).

Here, Petitioner has not alleged any circumstances that could arguably show cause and prejudice or a miscarriage of justice in order to excuse his procedural default of the claims in his motion to vacate. Because Petitioner has not established cause or prejudice with respect to his failure to raise these issues on appeal, his claims of an unknowing and involuntary guilty plea to the Section 924(c) violation,[4] a duplicitous indictment, and a constructive amendment to the indictment are not cognizable under 28 U.S.C. § 2255.

---

[4] Petitioner preserved for direct appeal the question of whether his sale of the gun in conjunction with the sale of the drugs provided a factual basis for a charge under §924(c). That issue was disposed of on appeal and is not a subject of Petitioners current petition.

**B.    Whether Guilty Plea Was Knowing and Voluntary**

In addition to being procedurally defaulted, Petitioner's claim that his plea of guilty was unknowing and involuntary was waived by the terms of his plea agreement and is without merit.

The Fourth Circuit has made clear that a waiver of a defendant's right to challenge his conviction or his sentence during post-conviction proceedings is enforceable as long as the defendant waives this right knowingly and voluntarily.  See United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005) ("[A] criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary.").  As is well established, the standard for determining the validity of a guilty plea is whether, when viewed under the totality of the circumstances, the guilty plea represents a knowing, voluntary, and intelligent "choice among the alternative courses of action open to the defendant."  Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970)).  The core requirements of a validly accepted plea of guilty are "(1) that the defendant understand the charges against him, (2) that he know and understand the direct consequences of his plea, and (3) that his plea be entirely free of coercion." United States v. Araiza, 693 F.2d 382,

384 (5th Cir. 1982)

Here, during his Rule 11 proceeding, Petitioner was questioned at length about his understanding of the charges against him, the potential penalties he faced, and the consequences of his decision to plead guilty. He was also specifically questioned about his decision to waive his right to challenge either his conviction or sentence during a post-conviction proceeding, and he affirmed that he understood the right he was waiving and agreed to waive that right. The Rule 11 colloquy makes clear that Petitioner's guilty plea was knowing and voluntary. Because Petitioner entered a knowing and voluntary guilty plea in which he waived his right to challenge his conviction and/or sentence on any basis other than (1) ineffective assistance of counsel, (2) prosecutorial misconduct, or (3) sufficiency of the evidence to support his conviction under Section 924(c), his claims that his guilty plea was unknowing and involuntary is waived and, therefore, barred from consideration on collateral review.

It should be noted that Petitioner never moved to withdraw his guilty plea. Therefore, he did not even preserve this issue for appeal, much less for collateral review. The only issue would be whether his plea was the result of ineffective assistance of counsel. That claim is also without merit.

Petitioner alleges that his plea of guilty to Count Two of the

superseding indictment charging that he used and carried a firearm in furtherance of a drug trafficking crime and possessed the firearm in violation of 18 U.S.C. § 924(c) was made unknowingly and involuntarily based on erroneous advice of counsel.  Specifically, Petitioner alleges that counsel did not listen to his version of the facts and, thus, failed to advise him properly as to how the law applied to his case and thus failed to defend him adequately, [Doc. 1-1 at 8, 9, 10]; that she only met with him twice before his court appearances, [id. at 10]; that he "was adamant about being held accountable for merely selling a gun one time, and being charged properly," [id. at 9]; that counsel failed to negotiate a plea agreement with the appropriate charge, [id.]; and that counsel failed to alert the Court that Petitioner's appropriate offense conduct was selling a gun in violation of 18 U.S.C. § 922, not § 924(c), [id.].  Further, Petitioner argues that had he known that he would have been subjected to a consecutive sentence of five years imprisonment, he would have proceeded to trial on the Section 924(c) violation.  [Id. at 10].

Petitioner argues that, despite a proper Rule 11 inquiry during his guilty plea proceedings, his plea of guilty was entered unknowingly because he "was at all times under the impression that he was pleading guilty to [the] 'sale of a firearm' . . . not the more onerous charge of

'carrying a firearm while selling drugs.'" [Id. at 8, 10]. Therefore, Petitioner contends that his guilty plea was unknowing and involuntary based on ineffective assistance of counsel.

Petitioner's argument, however, is belied by his statements as his Rule 11 hearing. "A defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (internal citation, quotation, and alterations omitted). "Indeed, because they do carry such a presumption, they present a formidable barrier in any subsequent collateral proceedings." Id. (internal quotations omitted). Thus, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible,' and 'patently frivolous or false.'" Id. (internal quotations and citations omitted).

While Petitioner asserts that he believed he was pleading guilty only to sale of a firearm and not to using and carrying a firearm during and relation to a drug transaction, the Court specifically informed him at his Rule 11 hearing that he was, in fact, pleading guilty to using and carrying a

firearm "during and in relation to a drug trafficking crime" and that in order for the Government to prove its case against him, it would be required to show that he had "used or carried a firearm during and in relation to" a drug trafficking crime. [Crim. No. 2:07-cr-28-MR-1, Doc. 33 at 9-10]. In response to the Court's recitation, Petitioner affirmed that he understood "each element of the offense," stating specifically, "[y]es, I comprehend." [Id. at 10].

With respect to Petitioner's assertion that he was not aware that he faced a five-year mandatory minimum term of imprisonment as to the firearm charge, he affirmed at his Rule 11 hearing that he understood that he faced "a mandatory minimum sentence of 5 years in prison if the firearm was possessed" and higher mandatory terms of imprisonment if the firearm was brandished, or discharged. [Id. at 10-11]. In fact, having been informed of the mandatory minimum five-year sentence for the firearm charge and the mandatory minimum five-year sentence for the drug charge, Petitioner was specifically informed that "Such term of imprisonment must be consecutive to any other term of imprisonment," and that "No term of imprisonment imposed upon a person under this subsection [§924(c)] shall run concurrently with any other term of imprisonment imposed upon the person, including any term of

24

imprisonment imposed for the crime – for the drug trafficking crime during which the firearm was used, carried or possessed." [Id. at 11]. Petitioner acknowledged he understood this. [Id.]. Additionally, Petitioner acknowledged through the terms of the plea agreement that he understood that he faced a five-year mandatory minimum term of imprisonment for the firearm offense to which he was pleading guilty.

It must also be noted that Petitioner received the mandatory minimum sentence on the drug charge and the mandatory minimum consecutive sentence on the gun charge. In order to show ineffective assistance of counsel, Petitioner must show prejudice, meaning that his sentence would likely have been more lenient absent counsel's errors. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999). Petitioner could not have received a lower sentence, absent a demonstration that one of the counts of conviction would not have stood, absent counsel's errors. Both counts were affirmed on appeal, and Petitioner has shown nothing in this proceeding indicating that there was any meritorious argument that counsel could have presented that would have eliminated either count. For this reason, Petitioner has failed to meet his burden with regard to Strickland prejudice as well.

Furthermore, Petitioner's claim that his plea was unknowing and involuntary as a result of counsel's deficient performance is belied both by

the detailed and comprehensive affidavit filed by defense counsel Wilson and by Petitioner's own statements under oath at the Rule 11 proceeding. Wilson's affidavit, based on time records and extensive notes, establishes that she did, in fact, consider Petitioner's version of the facts; that she reviewed the discovery carefully both on her own and with Petitioner; that she obtained further discovery relevant to the strength of the Government's case against Petitioner; and that she met with Petitioner no fewer than six times before the entry of his guilty plea, with some of the meetings lasting hours. Wilson's affidavit also evidences her familiarity with the law, as well as her willingness and effort to preserve any and all legal arguments against the Section 924(c) firearm charge. Finally, Wilson makes clear in her affidavit that she explained the charges against Petitioner, as well as the penalties he faced.

In sum, Wilson's affidavit and Petitioner's own statements under oath at his Rule 11 hearing, his claims of ineffective assistance of counsel relating to his decision to plead guilty fail, as he has shown neither deficient performance nor prejudice.

## C.    Defective Indictment

Next, Petitioner alleges that his conviction was based on a defective indictment and that defense counsel failed to recognize the defects and

defend Petitioner against them. As noted above, by the terms of his plea agreement, Petitioner is limited to collateral review based on ineffective assistance of counsel, prosecutorial misconduct and inadequacy of a factual basis to support the charge in County Two. As such, Petitioner has waived the arguments presented on this point.

Notwithstanding that waiver, Petitioner's argument on this issue is without merit. First, Petitioner claims that Count Two of the superseding indictment was insufficient because it incorrectly referenced the drug trafficking crime as a violation of 18 U.S.C. § 841(a)(1) instead of 21 U.S.C. § 841(a)(1), and that the count was also duplicitous because it charged two Section 924(c) offenses in one count, namely, (1) using and carrying a firearm during and in relation to a drug trafficking crime, and (2) possessing a firearm in furtherance of a drug trafficking crime. [Doc. 1-1 at 15]. Second, Petitioner alleges that both the Government and the Court constructively amended Count Two of the superseding indictment from "using and carrying and possessing a firearm, in the furtherance of a drug trafficking crime, to sale of a weapon." [Id. at 16].

Petitioner's defective indictment claim is without merit. First, a guilty plea effects a waiver of all non-jurisdictional defects in the indictment. Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d

235 (1973) (stating that "when a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea"); United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993) (same). Defects in the indictment are not jurisdictional. United States v. Cotton, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785, 152 L. Ed. 2d 860 (2002). Therefore, by pleading guilty Petitioner has waived his argument that the indictment was defective. Additionally, it is well settled that where a statute is worded in the disjunctive, federal pleading requires that an indictment be stated in the conjunctive in order to fully inform the accused of the charges. United States v. Montgomery, 262 F.3d 233, 242 (4th Cir. 2001).

Second, the citation error in Count Two of the superseding indictment constitutes harmless error. The Federal Rules of Criminal Procedure specifically provide that "[u]nless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or . . . to reverse a conviction." FED. R. CRIM. P. 7(c)(2). Petitioner contends the count was insufficient because of the clerical error, but he offers no evidence to demonstrate that he was

misled or prejudiced by the citation error in Count Two. Furthermore, where an indictment clearly sets out the nature of the charge but erroneously states the number of the statute at issue such defect is not a basis on which the indictment can be dismissed. US v. Soriano-Enriquez, 318 Fed. App'x. 244 (4th Cir. 2009) (indictment which tracked language of the statute and gave adequate notice of the crime charged not defective); United States v. Matzkin, 14 F.3d 1014 (4th Cir. 1994). US v. Meckley, 888 F.2d 1387 (4th Cir. 1989) (failure to object to typographical error in indictment waives technical defect).

Third, there is no evidence in the record that the Government and/or the Court constructively amended Count Two of the superseding indictment. Petitioner claims that Count Two was constructively amended "from – using and carrying and possessing a firearm, in the furtherance of a drug trafficking crime, to [the] sale of a weapon." [Doc. 1-1 at 16]. Petitioner appears to confuse the term "constructive amendment" with the evidence of his guilt to the Section 924(c) violation. Here, Petitioner's simultaneous sale of a firearm with two ounces of methamphetamine supported the Court's finding that the sale of the firearm occurred during and in relation to the sale of the methamphetamine. Likewise, as the Fourth Circuit observed on Petitioner's direct appeal, "[c]ontrary to Torres'

contention, the evidence supports a finding that he sold the firearm in relation to the narcotics transaction." Torres, 319 Fed. App'x at 222.

As for the ineffective assistance of counsel claim related to the alleged defective indictment, defense counsel Wilson states in her affidavit that even if Petitioner had raised the issues of a duplicitous indictment and constructive amendment, she would not have proceeded differently because his claims were contrary to applicable case law and without merit. Counsel cannot be found to be ineffective for failing to file frivolous motions or for failing to raise unfounded objections. Petitioner has failed to demonstrate that he was prejudiced in any way by counsel's representation on these issues. In sum, Plaintiff's claim regarding the alleged defective indictment must fail.

## D. Failure to Raise Meritorious Issues on Appeal

Finally, Petitioner alleges ineffective assistance of counsel on appeal. Specifically, he claims that the issue of sufficiency of the evidence on the Section 924(c) violation was "tactically deficient and strategically incomplete. . . . [and that] counsel did nothing to protect [Petitioner's] rights." [Doc. 1-1 at 21]. Petitioner contends that counsel should have raised the more meritorious issues of a conviction based on a constructive amendment and a duplicitous indictment. [Id. at 22]. Once again, as set

forth above, neither of these claims has merit with respect to trial counsel's performance in representing Petitioner in the district court; likewise, they would not have succeeded on appeal. Additionally, even if counsel's performance was in some way deficient, Petitioner has failed to demonstrate the prejudice required by Strickland that absent counsel's errors he would have proceeded to trial instead of pleading guilty. Indeed, Petitioner cannot establish prejudice because the evidence against him was more than sufficient to convict him of the drug and gun violations. Consequently, all of Petitioner's claims of ineffective assistance of counsel fail.

## CONCLUSION

For the reasons stated herein, the Court finds that Petitioner's claims in his Section 2255 motion are without merit and the Court will, therefore, grant summary judgment to Respondent.

Finally, the Court finds that the Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack

v. McDaniel, 529 U.S. 473, 484-85, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that his Motion to Vacate states a debatable claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. 473, 484-85, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## O R D E R

**IT IS, THEREFORE, ORDERED THAT:**

1.  Respondent's Motion for Summary Judgment [Doc. 7] is **GRANTED**; and

2.  Petitioner's § 2255 Motion to Vacate [Doc. 1] is **DENIED** and **DISMISSED**.

3.  That pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability.

Signed: February 25, 2013

Martin Reidinger
United States District Judge